IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:19CR148 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES ALLEN CLARK, | ) | GOVERNMENT'S TRIAL BRIEF |
| ERIC LOUIE HOGAN, | ) | |
| KENNETH ALLEN LATHAM, | ) | |
| JAMES KEVIN ALFORD | ) | |
| | ) | |
| Defendants. | ) | |

Now comes the United States of America, by its counsel, Justin E. Herdman, United

States Attorney, and Om M. Kakani, Alejandro A. Abreu, and Brian McDonough, Assistant

United States Attorneys, and hereby submits the attached Trial Brief.  This Trial Brief is

submitted in advance of certain anticipated evidentiary issues that may arise during trial based

upon the exchange of exhibits by the parties.

## Contents

I.   OVERVIEW OF THE CASE ............................................................................................4

    A.   CHARGES AS SET FORTH IN THE SUPERSEDING INDICTMENT..............4

    B.   GOVERNMENT'S THEORY OF THE CASE......................................................5

II.  ELEMENTS OF THE VIOLATIONS..............................................................................6

    A.   TITLE 18, UNITED STATES CODE, SECTION 1349 – CONSPIRACY
    (COUNTS 1 AND 21) ..........................................................................................6

        1.   Statutory Language ....................................................................................6

2.    Elements of the Offense ........................................................6

B.    TITLE 18, UNITED STATES CODE, SECTIONS 1343 AND 1346 – HONEST SERVICES WIRE FRAUD (COUNT 2-20) ..........................................7

    1.    Statutory Language ........................................................7

    2.    Elements of the Offense ........................................................7

C.    TITLE 18, UNITED STATES CODE, SECTION 1343 – MONEY AND PROPERTY WIRE FRAUD (COUNTS 22-26) ......................................7

    1.    Statutory Language ........................................................7

    2.    Elements of the Offense ........................................................8

D.    TITLE 18, UNITED STATES CODE, SECTION 286 – CONSPIRACY TO SUBMIT FALSE CLAIMS (COUNT 27) ............................................8

    1.    Statutory Language ........................................................8

    2.    Elements of the Offense ........................................................8

E.    TITLE 18, UNITED STATES CODE, SECTION 287 – FALSE CLAIMS (COUNTS 28-30) ..................................................................9

    1.    Statutory Language ........................................................9

    2.    Elements of the Offense ........................................................9

F.    TITLE 18, UNITED STATES CODE, SECTION 1031 – MAJOR FRAUD (COUNTS 31-33) ..................................................................9

    1.    Statutory Language ........................................................9

    2.    Elements of the Offense ........................................................10

III.    ANTICIPATED LEGAL ISSUES AT TRIAL ...............................................10

A.    RULE OF COMPLETENESS ON TEXT MESSAGES .......................................10

B.    CHARACTER WITNESSES LIMIT ....................................................11

C.    USE OF SUMMARY CHARTS TO PRESENT VOLUMINOUS INFORMATION...................................................................11

D.    EMAIL AND TEXT MESSAGE AUTHENTICATION .....................................12

1.    Displaying the text messages to the Jury along with images of participants aides jury comprehension without compromising authentication. ............17

E.    ADMISSIBILITY OF DEFENDANTS' OUT-OF-COURT STATEMENTS ......20

    1.    Non-hearsay Statements ...........................................................................20

    2.    Coconspirator Statements ........................................................................22

    3.    Statements by a Party Opponent ..............................................................24

F.    AUTHENTICATION AND ADMISSIBILITY OF BUSINESS RECORDS AND PUBLIC RECORDS ...............................................................................................24

    1.    Public Records and Reports – Rules 803(8) and 902(1), (2) and (4) of the Federal Rules of Evidence .......................................................................24

    2.    Records of Regularly Conducted Activity (Business Records) – Rule 803(6) and 902(11) of the Federal Rules of Evidence ..............................25

G.    GOVERNMENT WITNESSES TESTIFYING PURSUANT TO PLEA AGREEMENT .......................................................................................................28

H.    RULE 608 AND THE LIMITS OF IMPEACHMENT ..........................................29

I.    RULE 613 AND IMPEACHMENT WITH ANOTHER'S STATEMENT ..........31

IV.    MISCELLANEOUS ISSUES ...........................................................................................33

A.    EXPECTED LENGTH OF TRIAL/NUMBER OF WITNESSES .......................33

B.    DEFENSE DIRECT EXAMINATION OF GOVERNMENT WITNESSES .......33

C.    DISCOVERY STATUS .......................................................................................33

D.    HYBRID/OPINION WITNESSES ......................................................................34

E.    TRIAL DOCUMENTS ........................................................................................35

F.    PRESENCE OF GOVERNMENT AGENTS AT TRIAL ....................................35

# I.     OVERVIEW OF THE CASE

## A.     CHARGES AS SET FORTH IN THE SUPERSEDING INDICTMENT

The Superseding Indictment charges Defendant James Allen Clark with the following offenses:

Count 1: Conspiracy to Commit Honest Services Wire Fraud (18 U.S.C. § 1349)

Counts 2-20: Honest Services Wire Fraud (18 U.S.C. §§ 1343 and 1346)

Count 21: Conspiracy to Commit Wire Fraud (18 U.S.C. § 1349)

Counts 22-26: Wire Fraud (18 U.S.C. § 1343)

Count 27: Conspiracy to Submit False Claims (18 U.S.C. § 286)

Counts 28-30: False Claims (18 U.S.C. § 287)

Counts 31-33: Major Fraud (18 U.S.C. § 1031)

The Superseding Indictment charges Defendant Eric Louie Hogan with the following offenses:

Count 1: Conspiracy to Commit Honest Services Wire Fraud (18 U.S.C. § 1349)

Counts 2-20: Honest Services Wire Fraud (18 U.S.C. §§ 1343 and 1346)

Count 21: Conspiracy to Commit Wire Fraud (18 U.S.C. § 1349)

Counts 22-23; 25-26: Wire Fraud (18 U.S.C. § 1343)

Count 27: Conspiracy to Submit False Claims (18 U.S.C. § 286)

Counts 28-30: False Claims (18 U.S.C. § 287)

Counts 31-33: Major Fraud (18 U.S.C. § 1031)

The Superseding Indictment charges Defendant Kenneth Allen Latham with the following offenses:

Count 1: Conspiracy to Commit Honest Services Wire Fraud (18 U.S.C. § 1349)

Counts 2-20: Honest Services Wire Fraud (18 U.S.C. §§ 1343 and 1346)

The Superseding Indictment charges Defendant James Kevin Alford with the following offenses:

Count 21: Conspiracy to Commit Wire Fraud (18 U.S.C. § 1349)

Counts 22-23: Wire Fraud (18 U.S.C. § 1343)

Count 27: Conspiracy to Submit False Claims (18 U.S.C. § 286)

Counts 28-30: False Claims (18 U.S.C. § 287)

Counts 31-33: Major Fraud (18 U.S.C. § 1031)

B.    GOVERNMENT'S THEORY OF THE CASE

Defendants James Allen Clark, Eric Hogan, Kenneth Latham, and James Kevin Alford were all individuals involved in various construction contracts in Georgia, Kentucky and Ohio. As charged in the Superseding Indictment, Clark, Hogan and Latham were engaged in an ongoing conspiracy to deprive the government of the honest services of Latham, a Navy contracting officer representative.  This corruption occurred over several years, during which Latham, in return for a stream of benefits provided by Hogan and Clark, took favorable official actions on Navy contracts for Hogan and Clark, both as requested and as opportunities arose. This relationship continued through to 2016 as Latham still retained his position as a public official in the Navy and was still able to take actions favorable to Clark and Hogan as the opportunity arose.

In the other conspiracy, Clark, Hogan, and Alford were engaged in a scheme to obtain and perform on, and to submit, and continue to submit, false claims to the United States in relation to various government contracts, including an ongoing contract at NASA Plum Brook Station in Sandusky, Ohio.  As detailed in the Indictment, Hogan and Clark fraudulently obtained approval from the Veterans' Affairs Administration for Hogan's company, P&E Construction, to serve as a Service-Disabled Veteran-Owned Small Business Concern

5

(SDVOSBC).  Hogan did so in part by lying to the VA about the source of and his ability to obtain bonding on his own merit, rather than through Clark.  This fraudulently-obtained status allowed P&E to submit and be awarded contracts set-aside for properly-certified SDVOSBCs, which Hogan, Clark, Alford, P&E, Enola, and K&S were not.  The arrangement between Hogan, Clark, and Alford—namely that Hogan would, as the SDVOSB, bid on and obtain the contract, Clark would get a percentage of the contract value for providing the bonding capability to Hogan and P&E, and that Alford and K&S would perform the contract—made them ineligible for award of the contract.  The Defendants took efforts to conceal the arrangement from NASA, the VA, and the SBA, including sharing letterheads, having Alford and his employees put on P&E's payroll, and withholding a bonding disclosure letter that should have been disclosed to the government.

## II.    ELEMENTS OF THE VIOLATIONS

### A.    TITLE 18, UNITED STATES CODE, SECTION 1349 – CONSPIRACY (COUNTS 1 AND 21)

#### 1.    Statutory Language

Title 18, United States Code, Section 1349 provides:

> Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

#### 2.    Elements of the Offense

The elements of Conspiracy are:

1. First, two or more persons conspired, or agreed to commit the crime of Honest Services Wire Fraud as it relates to Count 1, and Money and Property Wire Fraud as it relates to Count 21;

2. Second, that the defendants charged in those counts knowingly and voluntarily joined the conspiracy.

B.     TITLE 18, UNITED STATES CODE, SECTIONS 1343 AND 1346 – HONEST
       SERVICES WIRE FRAUD (COUNT 2-20)

       1.     Statutory Language

Title 18, United States Code, Section 1343 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud,
> or for obtaining money or property by means of false or fraudulent pretenses,
> representations, or promises, transmits or causes to be transmitted by means of
> wire, radio, or television communication in interstate or foreign commerce, any
> writings, signs, signals, pictures, or sounds for the purpose of executing such
> scheme or artifice, shall be fined under this title or imprisoned not more than 20
> years, or both. . . .

Title 18, United States Code, Section 1346 provides:

> For the purposes of this chapter, the term "scheme or artifice to defraud" includes
> a scheme or artifice to deprive another of the intangible right of honest services.

       2.     Elements of the Offense

The elements of Honest Services Wire Fraud are:

1.  First, the Defendant knowingly devised or participated in a scheme to
    defraud the public of its right to the honest services of KENNETH ALLEN
    LATHAM, a public official through bribery or kickbacks;

2.  Second, the Defendants charged did so knowingly and with an intent to
    defraud;

3.  Third, the scheme to defraud involved a material misrepresentation, false
    statement, false pretense or concealment of a material fact; and

4.  Fourth, in advancing, or furthering, or carrying out the scheme to defraud,
    the Defendants transmitted, or caused to be transmitted, any writing, signal,
    or sound by means of wire communication in interstate or foreign commerce.

C.     TITLE 18, UNITED STATES CODE, SECTION 1343 – MONEY AND
       PROPERTY WIRE FRAUD (COUNTS 22-26)

       1.     Statutory Language

Title 18, United States Code, Section 1343 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud,
> or for obtaining money or property by means of false or fraudulent pretenses,

7

representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. . . .

    2.    <u>Elements of the Offense</u>

The elements of Honest Services Wire Fraud are:

1. First, that the defendants charged in counts 22 through 26 knowingly participated in, devised and intended to devise a scheme to defraud the United States, the United States Navy, and NASA to obtain money or property, that is, using their fraudulently and falsely obtained status as program eligible companies to submit invoices for payments on government contracts for which they were otherwise ineligible or incapable of obtaining, and further causing to be transmitted by means of interstate wire transmissions orders to transfer payments from the United States to accounts controlled by them.

2. Second, that the scheme included a material misrepresentation or concealment of a material fact;

3. Third, that the defendants charged in counts 22 through 26 had the intent to defraud; and

4. Fourth, that the defendants charged in counts 22 through 26 used wire, radio or television communications or caused another to use wire, radio or television communications in interstate commerce in furtherance of the scheme.

D.    <u>TITLE 18, UNITED STATES CODE, SECTION 286 – CONSPIRACY TO SUBMIT FALSE CLAIMS (COUNT 27)</u>

    1.    <u>Statutory Language</u>

Title 18, United States Code, Section 286 provides:

Whoever enters into any agreement, combination, or conspiracy to defraud the United States, or any department or agency thereof, by obtaining or aiding to obtain the payment or allowance of any false, fictitious or fraudulent claim, shall be fined under this title or imprisoned not more than ten years, or both.

    2.    <u>Elements of the Offense</u>

The elements of Conspiracy to Submit False Claims are:

1. First, two or more persons conspired, or agreed to commit the crime of Submitting False Claims as it relates to Count 27.

2. Second, that the defendants charged in those counts knowingly and voluntarily joined the conspiracy.

E.    TITLE 18, UNITED STATES CODE, SECTION 287 – FALSE CLAIMS (COUNTS 28-30)

    1.    Statutory Language

Title 18, United States Code, Section 287 provides:

> Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years and shall be subject to a fine in the amount provided in this title.

    2.    Elements of the Offense

The elements of False Claims are:

1. First, the defendants knowingly made and presented to NASA a false or fraudulent claim against the United States;

2. Second, the defendants charged knew that the claim was false, fictitious, or fraudulent.

F.    TITLE 18, UNITED STATES CODE, SECTION 1031 – MAJOR FRAUD (COUNTS 31-33)

    1.    Statutory Language

Title 18, United States Code, Section 1031 provides:

> Whoever knowingly executes, or attempts to execute, any scheme or artifice with the intent--
> (1) to defraud the United States; or
> (2) to obtain money or property by means of false or fraudulent pretenses, representations, or promises,
>
> in any grant, contract, subcontract, subsidy, loan, guarantee, insurance, or other form of Federal assistance, including through the Troubled Asset Relief Program, an economic stimulus, recovery or rescue plan provided by the Government, or the Government's purchase of any troubled asset as defined in the Emergency Economic Stabilization Act of 2008, or in any procurement of property or services as a prime contractor with the United States or as a subcontractor or supplier on a contract in which there is a prime contract with the United States, if the value of such grant, contract, subcontract, subsidy, loan, guarantee, insurance, or other form of Federal assistance, or any constituent part thereof, is $1,000,000

9

or more shall, subject to the applicability of subsection (c) of this section, be fined not more than $1,000,000, or imprisoned not more than 10 years, or both.

2.    Elements of the Offense

The elements of Major Fraud are:

1.  First, the Defendants charged knowingly used or tried to use a scheme with the intent to defraud the United States or to get money or property by using materially false or fraudulent pretenses, representations, or promises;

2.  Second, the scheme took place as a part of acquiring money as a contractor with the United States or as a subcontractor or a supplier on a contract with the United States; and

3.  Third, the value of the contract or subcontract was $1,000,000 or more.

## III.    ANTICIPATED LEGAL ISSUES AT TRIAL

### A.    RULE OF COMPLETENESS ON TEXT MESSAGES

The "rule of completeness" under Federal Rule of Evidence 106 does not prohibit the Government from introducing only some text messages sent among Defendants at trial.  It is anticipated that Defendants may argue that all of the text messages should be introduced and offered by the Government.  The Government disagrees based on Sixth Circuit law.

The "rule of completeness" "allows a party who is prejudiced by an opponent's introduction of part of a document, or a correspondence, or a conversation, to enter so much of the remainder as necessary to explain or rebut a misleading impression caused by the incomplete character of that evidence."  *United States v. Crosgrove*, 637 F.3d 646, 661 (6th Cir. 2011).  The Sixth Circuit has held that the rule of completeness "does not make inadmissible evidence admissible."  *Id.*; *see also United States v. Gallagher,* 57 Fed.Appx. 622, 628-629 (6th Cir. 2003) (quoting *Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 718 (6th Cir. 1999)).  *Crosgrove* found that because the messages that the defendant sought to admit were not "necessary to correct a misleading impression," the district court did not err in excluding

10

some of the messages.  *Id.*; *see also United States v. Benchick*, ___ Fed. App'x. ___, 2018 WL 898681, *4-5, Case No. 16-2471 (6th Cir. Feb. 15, 2018) (upholding the district court's decision not to require the Government to introduce all text messages).

In the present case, admission of some text messages sent among defendants will not create a misleading impression for any of the defendants.  Therefore, the Government should not be required to introduce all of the text messages, or the entire scope of conversations if they are otherwise irrelevant, at trial.

B.    CHARACTER WITNESSES LIMIT

The Government anticipates that Defendants will call multiple character witnesses.  It is within the Court's discretion to limit the number of character witnesses a party calls at trial. *See United States v. Sexton,* 119 Fed. Appx. 735, 745 (6th Cir. 2005) (finding that the district court did not err in limiting the number of character witnesses as "[f]urther witnesses testifying to these matters would have been redundant"); *see also Michelson v. U.S.,* 335 U.S. 469, 480 (1948) (stating that "courts of last resort sought to overcome danger that the true issues will be obscured and confused by investing the trial court with discretion to limit the number of such witnesses and to control cross-examination").  Similarly, in this case, the Government requests the Court limit such number to avoid redundancy and confusion of the issues.

C.    USE OF SUMMARY CHARTS TO PRESENT VOLUMINOUS
       INFORMATION

The Court is aware that the Superseding Indictment charges a conspiracy that spanned several years.  It involved numerous individuals, contracts and companies.  To present this evidence in an efficient and organized way, the Government is preparing summary charts, which will depict, among other things, the relationship and timeline of events that occurred between the defendants in the various schemes and conspiracies alleged in the Superseding Indictment.

11

These summary charts are themselves admissible evidence under Federal Rule of Evidence 1006, and the Government will seek to admit them as substantive evidence, which the jury can reference during deliberations.  Federal Rule of Evidence 1006 permits for such use of summary charts, by providing that "contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation."  The use of summary materials has been approved by the Sixth Circuit.  *See United States v. Bray*, 139 F.3d 1104, 1112 (6th Cir. 1998).  The Government will also include in its proposed jury instructions, the Sixth Circuit's pattern jury instruction 7.12.

The summary charts will accurately depict the evidence to be presented to the jury and will streamline the trial considerably by condensing numerous of exhibits into a handful of summary charts.  For each summary chart the Government anticipates using at trial, the Government has complied with Rule 1006 by providing the underlying documents to Defendant and/or making the underlying documents available for examination and copying in advance of the Court's discovery deadline.  Furthermore, the Government will provide the charts to Defendant in advance of trial.

     D.    <u>EMAIL AND TEXT MESSAGE AUTHENTICATION</u>

The Government will authenticate text messages and emails obtained in the course of the investigation.  These emails and text messages were obtained through: a)  subpoenas to companies and accompanied by affidavits executed under FRE 902(11) and 803(6); b) lawfully-issued and executed search warrants served on internet service providers and accompanied by 902(11) and 803(6) affidavits; or c) upon voluntary consent of Eric Hogan.  In reviewing the evidence, the case agents retrieved and isolated certain emails and text messages.  For the reasons set forth below, courts have held that this evidence is admissible under the Federal Rules of Evidence.

Federal Rule of Evidence 901 provides that, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  The proponent's burden "is not high—only a prima facie showing is required, and a district court's role is to serve as gatekeeper in assessing whether the proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic."  *United States v. Cornell,* 780 F. 3d 616, 629 (4th Cir. 2015) (internal citation and quotation omitted).  *See also United States v. Fluker,* 698 F.3d 988, 999 (7th Cir. 2012) ("Only a prima facie showing of genuineness is required; the task of deciding the evidence's true authenticity and probative value is left to the jury.").

"Once a prima facie case is made, the evidence goes to the jury and it is the jury who will ultimately determine the authenticity of the evidence, not the court."  *United States v. Thomas*, 921 F.2d 277, at *4 (6th Cir. 1990) (table opinion) (citations omitted).  "The only requirement is that there has been substantial evidence from which they could infer that the document is authentic."  *Id.*, quoting *United States v. Jardina*, 747 F.2d 945, 951 (5th Cir. 1984); *see also United States v. Carriger,* 592 F.2d 312, 316 (6th Cir. 1979) (concluding "that the district court erred in requiring further authentication of the promissory notes").

Courts have allowed emails to be authenticated by circumstantial evidence when an email from a defendant cannot be directly authenticated through testimony.  The Sixth Circuit has upheld the admission of a document authenticated circumstantially from the contents of the document as contemplated in Rule 901(b)(4).  *See United States v. Jones*, 107 F.3d 1147, 1150 (6th Cir. 1997).  The Eleventh Circuit has held that, "[t]he government may authenticate a document solely through the use of circumstantial evidence, including the document's own

13

distinctive characteristics and the circumstances surrounding its discovery." *United States v. Siddiqui,* 235 F.3d 1318 (11th Cir. 2000) (*quoting United States v. Smith*, 918 F.2d 1501, 1510 (11th Cir. 1990) and *citing Hicks v. United States*, 502 U.S. 849, 112 S.Ct. 151, 116 L.Ed.2d 117 (1991).  In *Siddiqui*, the court applied the provisions of rule 901(b)(4) to affirm the district court's admission of the defendant's emails at trial based on the subject emails bearing the defendant's email address, the content of the emails reflecting detailed information regarding the relevant conduct, and the emails depicting the author in defendant's nickname of "Mo." *Id.* at 1322-1323.  Other circuits have adopted and followed the Eleventh Circuit's circumstantial approach to the authentication of emails.

The court's analysis in *Siddiqui* regarding the circumstantial authentication of e-mails into evidence at trial has proven instructive for other courts.  In *United States v. Vaghari*, No. 08-693-01-02, 2009 WL 2245097 (at *8)(E.D. Pa. July 27, 2009), the District Court for the Eastern District of Pennsylvania applied Rule 901(a) to permit the introduction of e-mails based on said e-mails bearing the defendant's name and e-mail address and the fact that hard-copies were obtained from defendant's apartment.  In so holding, the *Vaghari* court noted, "[o]ther courts have authenticated e-mails in this manner, relying on e-mail addresses in the headers, explanation in the body of the e-mails, defendant's conduct after receiving the e-mails, and other circumstantial evidence." *Id.* (*citing United States v. Siddiqui*, 235 F.3d 1318, 1322-23 (11th Cir. 2000) and *United States v. Safavian*, 435 F. Supp. 2d 36, 39-42 (D.D.C. 2006)).  Further, the Seventh Circuit addressed e-mails which were impossible to authenticate under Rule 901(b)(1) as neither the author nor anyone who saw the author compose the e-mails testified at trial. *United States v. Fluker*, 698 F.3d 988, 999 (7th Cir. 2012).  The *Fluker* court

specifically relied on the email addresses used, as they appeared on the subject e-mails, and the extent of the author's knowledge of the relevant events.  698 F.3d at 1000.

Courts have consistently held that if law enforcement recovers a cell phone from the defendant, and the phone contains information tying it to the defendant, then the text messages recovered from that phone may be authenticated and attributed to the defendant. *See, e.g.*, *United States v. Lewisbey*, 843 F.3d 653, 658 (7th Cir. 2016) (text messages from Samsung cell phone properly authenticated where (1) police seized cell phone from defendant's room, (2) phone contained contact information for the defendant's former employer, and (3) defendant had previously used the phone to arrange gun sale to confidential informant); *United States v. Mebrtatu*, 543 F.App'x. 137, 140–41 (3d Cir. 2013) (text messages from cell phone properly authenticated where police seized phone from defendant's person, and texts recovered from the phone addressed the defendant and her co-defendants by name); *United States v. Ellis*, No. 12-CR-20228, 2013 WL 2285457, at *1 (E.D. Mich., May 23, 2013) (text messages from cell phone properly authenticated as being authored by defendant where (1) the phone was recovered from the defendant's person, (2) the phone contained pictures of the defendant and his car, (3) the phone contained contacts for the defendant's brother and girlfriend, and (4) the phone contained texts addressed to the defendant by name); *United States v. Benford*, No. CR-14-321-D, 2015 WL 631089, at *4–6 (W.D. Okla., Feb. 12, 2015) (text messages properly authenticated as being authored by defendant where (1) the phone was recovered from defendant's person, (2) defendant provided police with passcode to unlock phone, (3) and text messages on phone contain monikers that identify defendant).

Here, as in the cases cited above, there is ample evidence to show that the text messages recovered from the phone and documents and emails from the computer meet the threshold for

authentication: (1) NASA OIG Agents obtained the phone and computer upon written consent of defendant Hogan, who personally delivered those objects to the agents; (2) the phone contained contact information for co-defendants, including information connected to Clark's company, Enola Contracting, and the computer contained numerous documents and emails addressed to the co-defendants; and (3) the text messages and emails refer to the co-defendants directly either by name or reference specific aspects of the conspiracy.  Thus there is sufficient evidence to authenticate the text messages and email communications under Rule of Evidence 901(a).  *See, e.g., State v. Gibson*, 2015 WL 1962850 (6th Dist. Lucas No. L-13-1222, 2015-Ohio-1679) (Facebook account authenticated based on terms used in profile, gang names, gang affiliations, and consistent location information); *United States v. Brown*, 801 F.3d 679 (6th Cir. 2015) (drug ledger properly authenticated based on objects found near the ledger); *United States v. Shrout*, 298 Fed. Appx. 479 (6th Cir. 2008) (planner properly authenticated based on the consistent placement of name and address across a planner and entries that reflect information independently known about the individual's business practices and daily activities).

In the present case, the Government anticipates seeking the introduction of numerous emails and text messages in which one or more defendant is a party.  In the absence of a stipulation, it will be difficult, if not impossible, to authenticate these communications fully due to the fact that Defendants, if they testify at all, will not testify during the Government's case in chief.  The Government anticipates testimony that the subject communications were obtained via subpoena to the Hartford, along with an accompanying business records certification executed under Federal Rules of Evidence 902(11), or extracted from devices lawfully obtained from the defendants using known and reliable electronic means and authenticated pursuant to Rule 902(13) and 902(14).  In addition to constituting business

records under Rule 803(6) of the Federal Rules of Evidence, the Government submits that authentication will be established pursuant to Rule 901(b)(4) by the source of the communications, the email addresses or phone numbers used, and the content of the communication being directly related to the charged conduct.

1.  Displaying the text messages to the Jury along with images of participants aides jury comprehension without compromising authentication.

The extraction software used to examine Hogan's phone displays all text messages on the phone in a simple database format, chronologically, without keeping certain conversations in an ongoing thread.  Thus, in certain situations where Hogan is engaging in multiple conversations with the co-defendants and others, these conversations are intermingled in the extraction output. This manner of presentation is confusing and unhelpful to the jury.  To avoid confusion and aide jury comprehension, the United States has extracted relevant exchanges of text messages in chronological format limited to the participants in that thread, along with visual aids, including professional or driver's license photos of the participants, to assist the jury in understanding who are the participants to a particular conversation.  To do this, the government simply extracted the substance of each message and refigured them in a format to make them appear as close to a phone text message conversation as possible to aid the jury in their comprehension.  The government will not edit the substance of the communications themselves and will provide defense counsel with copies of the proposed exhibits by October 24, 2019.

Federal courts of appeals have approved of the introduction of selected electronic exchanges as trial exhibits. In *United States v. Hunter,* 266 F.App'x. 619 (9th Cir. 2008), for example, the Ninth Circuit affirmed the district court's decision to admit excerpts of text messages. *Id.* at 621. The Ninth Circuit noted that if a defendant objects to the admission of selected conversations, the defendant's proper recourse is not to have the evidence excluded, but

rather to "compel the government to introduce the rest of the incomplete evidence." *Id. See also United States v. Lanzon,* 639 F.3d 1293, 1302 (11th Cir. 2011) (holding rule of completeness in Rule 106 was not violated where transcripts of edited portions of online chats were introduced because rule of completeness "permits introduction only of additional material that is relevant and is necessary to qualify, explain or place into context the portion already introduced" and "does not automatically make the entire document admissible"), citing *United States v. Simms,* 385 F.3d 1347, 1359 (11th Cir. 2004). In the present case, the United States produced to the defendants all of the text messages found on Hogan's phone.  The defendants would be free to offer any additional text message exchanges during trial, assuming they are otherwise relevant or admissible.

Federal courts have also approved of parties introducing evidence of conversations transferred into other formats, as long as the substance of the conversation is not altered or amended. *See, e.g., United States v. Gagliardi,* 506 F.3d 140, 151 (2d Cir. 2007) (transcripts of instant message conversations "largely cut from [a detective's] electronic communications [with defendant] and then pasted into word processing files" were sufficiently authenticated by detective and informant); *United States v. Culberson,* No. 05-80972, 2007 WL 1266131, at *2 (E.D.Mich. Apr. 27, 2007) (transcriptions of emails copied verbatim by federal agent were authenticated through "testimony from the preparer of the transcript and participants in the original emails"); *Porter v. United States,* No. 08-CV-1497, 2008 WL 5451011, at *3 (E.D.N.Y. Dec. 31, 2008) (transcripts of instant messenger conversations authenticated where "the prosecution offered in evidence transcripts of the instant messenger conversations in the form of a WordPerfect document created using a cut-and-paste method, which preserved the conversations in their entirety").

In *United States v. Lundy,* for example, the district court allowed a similar procedure to that proposed by the government in this case. There, a detective participated in a series of on-line chats through Yahoo! with the defendant. The detective copied the substance of each chat from Yahoo! into a word processing program and created a Word document that accurately reflected the contents of each of the chats. *Lundy,* No. 10-60986, 2012 WL 1021795, at *6  (5th Cir. 2012) ("[T]he chat conversations ... were preserved by [the detective] cutting and pasting the chats into a Word document."). On appeal, the defendant argued that the chats were not properly authenticated. The Fifth Circuit rejected this argument and held that the detective's "testimony that the chats are as he recorded them is enough to meet the low threshold for authentication." *Id.* at *7. Certainly, the detective would be "subject to cross-examination on his biases and methodology" which the jury could consider in weighing the evidence against the defendant. *Id.*

The method proposed by the United States comports with the best evidence rule. Under Rule 1003, "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003 & advisory committee notes ("When the only concern is with getting the words or other contents before the court with accuracy and precision, then a counterpart serves equally as well as the original, if the counterpart is the product of a method which insures accuracy and genuineness."); *see also* Fed. R. Evid. 1001(e) (defining a duplicate as "a counterpart produced by a mechanical, photographic, chemical, electronic or other equivalent process or technique that accurately reproduces the original").

Courts have construed Rule 1003 to allow parties to produce at trial duplicates of data from a digital source copied and pasted into a Word document. *See Lanzon,* 639 F.3d at 1301. In this case, the evidence in the extraction reports of the forensic image of Hogan's phone is the

original documentation of the text messages.  The text message exchanges the government seeks to introduce will be duplicates of the information contained in those reports, because they are merely electronically copied messages that will not alter or amend the substance of the messages. *Lanzon,* 639 F.3d at 1301 (transcripts of online chats satisfied best evidence rule where defendant who copied and pasted chats into Word document and then printed chats in transcript form testified about duplication process).  The method proposed by the government comports with the best evidence rule and also greatly aids the jury in reading and comprehending the text messages, which are highly probative of the defendants' conduct in this case.

### E.  ADMISSIBILITY OF DEFENDANTS' OUT-OF-COURT STATEMENTS

The United States intends to offer out-of-court statements made by the Defendants. These statements will be admissible under one or more of the following theories: (1) the statements are non-hearsay; (2) the statements were made by a coconspirator pursuant to Federal Rule of Evidence 801(d)(2)(E); (3) the statements were made by a party-opponent pursuant to Federal Rule of Evidence 801(d)(2); or (4) the statements are subject to another specific hearsay exception.[1]

#### 1.  Non-hearsay Statements

A large portion of the Defendants' out-of-court statements are not subject to the rule against hearsay because they are not being offered for the truth of the matter asserted. Federal Rule of Evidence 801(c) defines hearsay as an out-of-court statement offered to prove the truth of the matter asserted. *See United States v. Johnson*, 71 F.3d 539, 543 (6th Cir. 1995). As such,

---

[1] Given the vast number of statements involved in this case, this section is not intended as an exhaustive list of every out-of-court statement that may be introduced by the United States at trial. Rather, this section is intended to outline the legal theories the United States intends to rely on for admitting the statements.

an out-of-court statement is not hearsay if (1) it does not contain an assertion, *see United States v. Wright*, 343 F.3d 849, 865 (6th Cir. 2003), or (2) it is not offered to prove the truth of what it asserts, *see United States v. Rodriguez-Lopez*, 565 F.3d 312, 314–15 (6th Cir. 2009).

Likewise, statements introduced to prove their falsity, rather than the truth of what they assert, do not implicate the rule against hearsay or the Confrontation Clause. *See United States v. Porter*, No. 17-5064 at 5–6 (6th Cir. 2018) (per curiam) (recommended for full text publication), *available at* http://www.opn.ca6.uscourts.gov/opinions.pdf/18a0061p-06.pdf. Statements that consist solely of questions or commands are not hearsay because they do not contain assertions. *See Rodriguez-Lopez*, 565 F.3d at 314. And other statements will be admissible to provide context to related evidence in the case. *See United States v. Henderson*, 626 F.3d 326 (6th Cir. 2010) (holding that a non-party's half of a conversation with defendant was not hearsay, because it was admissible as context for the defendant's half).

Finally, many of the Defendants' out-of-court statements, such as the solicitation and acceptance of bribes, qualify as verbal acts that are not subject to the hearsay rule. "A verbal act is an utterance of an operative fact that gives rise to legal consequences." 5 WEINSTEIN'S FEDERAL EVIDENCE § 801.11(3) (2012). For verbal acts, "[i]t is the fact that the declaration was made, and not the truth of the declaration, which is relevant." *United States v. Childs*, 539 F.3d 552, 559 (6th Cir. 2008). Thus, where a statement directs the formation and operation of a conspiracy, illegally solicits someone else to perform an act, or puts forward a bribe, that statement is not barred by the hearsay rules, regardless of the truth or falsity of its assertion. *See United States v. Forfana*, 543 F. App'x. 578, 580 (6th Cir. 2013) ("words used to offer a bribe amount to 'verbal acts' with their own legal significance and do not qualify as hearsay").

21

2.    Coconspirator Statements

Many of the Defendants' statements, including the bulk of the text messages that the United States intends to offer from Hogan's phone, will be admissible as coconspirator statements under Federal Rule of Evidence 801(d)(2)(E). Under that rule, an out-of-court statement is not hearsay if it "was made by the party's coconspirator during and in furtherance of the conspiracy." FED. R. EVID. 801(d)(2)(E). The proponent must show by a preponderance of evidence that: (1) a conspiracy existed; (2) the defendant against whom the statement is offered was a member of the conspiracy; and (3) the statement was made during and in furtherance of the conspiracy. *See United States v. Enright*, 579 F.2d 980, 986 (6th Cir. 1978). The court may consider the underlying statements themselves in determining whether this hearsay exception applies. *See Bourjilay v. United States*, 483 U.S. 171, 176–81 (1987). The court may also conditionally admit coconspirator statements subject to a later determination of their admissibility. *See Enright*, 579 F.2d at 983–87. *See also United States v. Kone*, 307 F.3d 430, 440 (6th Cir. 2002). The coconspirator hearsay exception does not depend on whether the government specifically charged the conspiracy or the involved coconspirators. *See United States Franklin*, 415 F.3d 537 (6th Cir. 2005).

A statement is "in furtherance of the conspiracy" if it was intended to promote the objectives of the conspiracy. *United States v. Monus*, 128 F.3d 376, 392 (6th Cir. 1997). However, statements made "in furtherance of the conspiracy" can take many forms and be susceptible to many interpretations. *See United States v. Tocco*, 20 F.3d 401, 419 (6th Cir. 2000). Indeed, there is no requirement that the coconspirator's statement be "exclusively, or even primarily, made to further the conspiracy." *See id.* (quoting *United States v. Doerr*, 886 F.2d 944, 951–52 (7th Cir. 1989)).

The Sixth Circuit has held that the following types of statements qualify as being "in furtherance of the conspiracy": statements that keep coconspirators apprised of others' activities, *see United States v. Kelsor*, 665 F.3d 684, 694 (6th Cir. 2011), statements that allay the fears of other coconspirators, *see Monus*, 128 F.3d at 392–93, statements that "prompt a listener to act in a manner that facilitates the carrying out of the conspiracy," *see United States v. Jerkins*, 871 F.2d 598, 606 (6th Cir. 1989), statements made the day after a truck robbery was completed that explained what happened, who participated, how the stolen money would be distributed, and warned the coconspirator not to get caught, *see Franklin*, 415 F.3d at 551–53, conversations designed to collect money, *see United States v. Hamilton*, 689 F.2d 1262, 1270 (6th Cir. 1982), statements made to potential recruits to solicit their participation, *see United States v. Holloway*, 740 F.2d 1373, 1376 (6th Cir. 1984), and statements that "identify participants and their roles in the conspiracy," *United States v. Clark*, 18 F.3d 1337, 1342 (6th Cir. 1994).

For example, a witness in this case was told by Clark that he had someone on the inside at MCLB Albany that was proving him the government estimate for certain projects.  This statement would meet all three elements of a coconspirator statement under Federal Rule of Evidence 801(d)(2)(E) because: (1) the Defendants were engaged in a conspiracy that included sending Latham a stream of benefits in exchange for official actions in his position with the Navy; (2) the statement is being offered against the individuals in the conspiracy (Clark and Latham); and (3) the statement was made during and in furtherance of the conspiracy, as it kept the coconspirators apprised of the manner in which Clark was obtaining the numbers to bid on contracts at MCLB Albany and further promoted the coconspirators objective of reaping the benefits of their illicit scheme.

23

3.     Statements by a Party Opponent

In addition to the exceptions cited above, each Defendant's own statements are admissible against him personally under Federal Rule of Evidence 801(d)(2)(A) as statements made by a party opponent. Fed. R. Evid. 801(d)(2)(A); *United States v. Matlock*, 415 U.S. 164, 172 (1974). Other statements may qualify as adoptive admissions under Rule 801(d)(2)(B) if one of more of the defendants "manifested an adoption or belief in the statements' truth." *See United States v. Williams*, 445 F.3d 724, 735 (4th Cir. 2006); *United States v. Safavian*, 435 F. Supp. 2d 36, 43–44 (D. D.C. 2006) (ruling that emails authored by defendant may be admissible as statements by a party opponent, and emails forwarded by defendant may be admissible as adoptive admissions).

If the court finds that a Defendant's statement is hearsay, and that it does not qualify as a statement of a coconspirator or under any other hearsay exception, the remaining defendants may request that the court give the jury a limiting instruction.

F.     AUTHENTICATION AND ADMISSIBILITY OF BUSINESS RECORDS AND PUBLIC RECORDS

1.     Public Records and Reports – Rules 803(8) and 902(1), (2) and (4) of the Federal Rules of Evidence

The Government intends to offer documents at trial which are certified public records or reports.  Rule 803(8) of the Federal Rules of Evidence governs their admission:

**Hearsay Exceptions; Availability of Declarant Immaterial**

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

* * * *

**(8) Public records and reports.**  Records, reports, statements or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which

24

> matters there was a duty to report, excluding, however, in criminal
> cases matters observed by police officers and other law
> enforcement personnel, or (C) in civil actions and proceedings and
> against the Government in criminal cases, factual findings
> resulting from an investigation made pursuant to authority granted
> by law, unless the sources of information or other circumstances
> indicate lack of trustworthiness.

Fed. R. Evid. 803(8).   Rules 902(1), (2) and (4) allow for these documents to be self-authenticated and the government, although not required, has provided abundant notice to defendants of its intent to present and authenticate these documents without a custodian of records present at trial.

Specifically, the Government anticipates offering into evidence certified copies of court documents filed with governmental entities from the States of Ohio, Florida and Georgia.  These documents fall within the hearsay exception of Rule 803(8) as public records.

> 2.    Records of Regularly Conducted Activity (Business Records) – Rule
> 803(6) and 902(11) of the Federal Rules of Evidence

The Government intends to offer a large number of business records as evidence in this case.  Business records are admissible under Rule 803(6) of the Federal Rules of Evidence, notwithstanding the hearsay rule and regardless of the availability of the declarant, as follows:

> **Hearsay Exceptions; Availability of Declarant Immaterial**
>
> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> * * * *
>
> **(6) Records of regularly conducted activity.**  A memorandum,
> report, record, or data compilation, in any form, of acts, events,
> conditions, opinions, or diagnoses, made at or near the time by, or
> from information transmitted by, a person with knowledge, if kept
> in the course of a regularly conducted business activity, if it was
> the regular practice of that business activity to make the
> memorandum, report, record, or data compilation, all as shown by
> the testimony of the custodian or other qualified witness, or by

25

> certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of the information or the method or circumstances of the preparation indicate lack of trustworthiness.  The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Rule 803(6) of the Federal Rules of Evidence.  The business record exception to the hearsay rule is available when (1) the evidence was made in the course of a regularly conducted business activity; (2) the evidence was kept in the regular course of that business; (3) the regular practice of the business was to make the memorandum, etc., and (4) the memorandum, etc., was made by a person with knowledge or from information transmitted by a person with knowledge.  United States v. Fawaz, 881 F.2d 259, 266 (6th Cir. 1989).  The witness through whom the records are offered "'need not be in control of or have individual knowledge of the particular corporate records . . ., but need only be familiar with the company's record-keeping practices.'"  United States v. Weinstock, 153 F.3d 272, 276 (6th Cir. 1998) (quoting In re Custodian of Records of Varsity Distrib., Inc., 927 F.2d 244, 248 (6th Cir. 1991)).  Thus, the rule is broad enough to allow for the admission of computer-generated records if the requirements of the rule are otherwise met.  Weinstock, 153 F.3d at 276.

Finally, the Eighth Circuit has addressed scenarios where a document created by a third party appears as a business record for another entity.  Specifically, the Eighth Circuit held, "[s]everal other courts have held that a record created by a third party and integrated into another entity's records is admissible as the record of the custodian's entity, so long as the custodian entity relied upon the accuracy of the record and the other requirements of Rule 803(6) are satisfied.  Brawner v. Allstate Idemnity Company, 591 F.3d 984, 987 (8th Cir. 2010) (citing United States v. Adefehinti, 510 F.3d 319, 325-26 (D.C. Cir. 2007); Air Land Forwarders, Inc. v. United States, 172 F.3d 1338, 1342-44 (Fed. Cir. 1999); United States v. Childs, 5 F.3d 1328,

1333-34 (9th Cir. 1993); and United States v. Duncan, 919 F.2d 981, 986-87 (5th Cir. 1990)).

The Brawner court announced, "[w]e agree with these courts and hold that the district court did

not abuse its discretion by concluding that Allstate was not required to produce an individual

from the entity that prepared the record to establish a foundation." Id.  Accordingly, the

government need not present the individual who prepared a particular document when that

record was integrated into custodian's records and entity employing the custodian relied upon the

record.

Rule 902(11) of the Federal Rules of Evidence permits the authentication of business

records with an out-of-court certification, rather than requiring the testimony of a record

custodian at trial.  Rule 902(11) states:

> **Self-authentication**
>
> Extrinsic evidence of authenticity . . .
>
> * * * *
>
> **(11) Certified domestic records of regularly conducted
> activity.**  The original or a duplicate of a domestic record of
> regularly conducted activity that would be admissible under Rule
> 803(6) if accompanied by a written declaration of its custodian or
> other qualified person, in a manner complying with any Act of
> Congress or rule prescribed by the Supreme Court pursuant to
> statutory authority, certifying that the record —
>
> (A) was made at or near the time of the occurrence of the matters
> set forth by, or from information transmitted by, a person with
> knowledge of those matters;
>
> (B) was kept in the course of the regularly conducted activity; and
>
> (C) was made by the regularly conducted activity as a regular
> practice.
>
> A party intending to offer a record into evidence under this
> paragraph must provide written notice of that intention to all
> adverse parties, and must make the record and declaration

27

> available for inspection sufficiently in advance of their offer into
> evidence to provide an adverse party with a fair opportunity to
> challenge them.

Rule 902(11) of the Federal Rules of Evidence.  Federal Rule of Evidence 902(11) provides that documents that would be admissible as a business record may be authenticated without a witness "if accompanied by a written declaration of its custodian or other qualified person, in a manner complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority, certifying that the record--(A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; (B) was kept in the course of the regularly conducted activity; and (C) was made by the regularly conducted activity as a regular practice."

The Government has obtained certifications for all of its business and public records, provided them to defense counsel in discovery and notified counsel of its intent to proceed to trial without calling custodians of records as to those documents.  By providing these records well in advance of trial, the Government provided the defendants a fair opportunity to challenge them.  The Government has received no objection.

## G.  GOVERNMENT WITNESSES TESTIFYING PURSUANT TO PLEA AGREEMENT

The government anticipates presenting the testimony of a number of individuals who have been criminally charged with offenses related to the instant matter.  These individuals have pled guilty pursuant to plea agreements with the United States.  The government anticipates that these witnesses will testify at trial as to their role(s) in the conspiracies.

The Sixth Circuit Court of Appeals has previously ruled that, "a guilty plea of a codefendant may not be received as substantive evidence of a codefendant's guilt, but may properly be considered as evidence of a witness' credibility."  *United States v. Thornton*, 609

F.3d 373, 377-78 (6th Cir. 2010); *United States v. Christian*, 786 F.2d 203, 214 (6th Cir. 1986) (*citing United States v. Halbert*, 640 F.2d 1000, 1004 (9th Cir. 1981)).  Moreover, "under proper instruction, evidence of a guilty plea may be elicited by the prosecutor on direct examination so that the jury may assess the credibility of the witnesses the government asks them to believe." Id. The Sixth Circuit has explained that a plea agreement may be interpreted as either helping or hurting a witness' credibility, so that introducing the entire agreement is appropriate to permit the jury, "to consider fully the possible conflicting motivations underlying the witness' testimony." *United States v. Tocco*, 200 F.3d 401, 416 (6th Cir. 2000) (*quoting United States v. Townsend*, 796 F.2d 158, 163 (6th Cir. 1986)).  In addition, "[t]he prosecutor may ... wish to place the plea before the jury so as to blunt defense efforts at impeachment and dispel the suggestion that the government or its witness has something to hide."  *Christian*, 786 F.2d at 214.

Here, the government anticipates that in addition to testimony concerning the witness's role in the conspiracy, the witness will also testify regarding their understanding of their plea agreement.  The government is entitled to elicit this information from its witness in order for the jury to assess the witness's credibility.  The Government, of course, acknowledges that the plea agreement is not substantive evidence of guilt of these defendants and that a limiting instruction concerning the proper use of such testimony would be appropriate, if requested by the defense.

H.    RULE 608 AND THE LIMITS OF IMPEACHMENT

A defendant's right to confront the witnesses against him through cross-examination is not absolute. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). "On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits upon such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* at 679.  The government intends to present the testimony of several

civilian witnesses in its case in chief, some of whom have convictions over fifteen years ago or have been merely accused of crimes without any further actions. The government seeks an order from this Court preventing defense counsel from attempting to impeach witnesses on arrests and crimes for which they were not convicted.

Under Federal Rule of Evidence 609(a), "evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year," and "evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness." *United States v. Morrow*, 977 F.2d 222, 227 (6th Cir. 1992). Arrests are not convictions. Dismissed charges are not convictions. Pending, unresolved cases are not convictions. Acquittals are not convictions. The underlying factual basis for a prior conviction is generally not a proper subject for impeachment under Rule 609. *See United States v. Lopez-Medina*, 596 F.3d 716, 737-38 (10th Cir. 2010); *United States v. Dansker*, 537 F.2d 40, 59-60 (3d Cir. 1976).

Unless there is some other articulable, good faith basis for attempting to impeach a witness about prior arrests, dismissed charges, pending unresolved charges, acquittals, non-qualifying convictions, or underlying factual basis, no witness should be cross-examined in any manner about such subjects. The United States hereby requests an order from this Court directing that Rule 609 should be followed in cross-examining witnesses. Sustained objections in the presence of the jury during trial are a much less effective means of honoring Rule 609 than is compliance with the rule before an improper question is asked.

Additionally, the provisions of Rule 608 should prevent improper cross-examination of certain government witnesses who have never been arrested or charged with any crimes . . .

I.     RULE 613 AND IMPEACHMENT WITH ANOTHER'S STATEMENT

The Court should prohibit improper impeachment of witnesses using the written statement of another individual.  Simply put, a witness cannot be impeached with someone else's statement.  *See United States v. Carpenter*, 819 F.3d 880, 886 (6th Cir. 2016), *rev'd and remanded on other grounds*, 138 S. Ct. 2206 (2018); *United States v. Hassan*, 552 Fed App'x. 527, 532 (6th Cir. 2014); *United States v. Bao*, 189 F.3d 860, 866 (9th Cir. 1999) ("Only the declarant of the prior inconsistent statement, not another witness, may be impeached with the statement"); *United States v. Tarantino*, 846 F.2d 1384, 1416 (D.C. Cir. 1988) ("witnesses are not impeached by prior inconsistent statements of other witnesses, but they their own prior inconsistent statements"); *Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir. 1995)("Whereas an inconsistent statement by a testifying witness can be used to impeach that witness's credibility, an inconsistent account by another source is offered to show an alternative view of the truth.").

Although not required under the *Jencks* Act, the government has provided numerous memoranda of interviews (MOIs), prepared by federal special agents, for the government's trial witnesses in its disclosures to defense.  In this circumstance, the defense should be limited to using these MOIs consistent with the law and the rules of evidence.  A third party's notes about a person's statements are not tantamount to a person's actual statements and are therefore inadmissible as a statement of the witness unless it was adopted.  *See United States v. Schoenborn*, 4 F.3d 1424, 1427 (7th Cir. 1993) (explaining that a third party's characterization of a statement is not the same as an actual prior statement, unless the witness subscribed to that characterization); *United States v. Wimberly*, 60 F.3d 281, 286 (7th Cir. 1995) (explaining that a witness adopted a statement when she read an agent's report, made corrections, and signed the

document); *United States v. Farley*, 2 F.3d 645, 654-55 (6th Cir. 1993) ((holding that because there was "no proof that the statement was adopted or approved . . . it was not clearly erroneous . . . to deny defendants access to the FBI 302").

As such, the Court should limit cross examination to the extent a party seeks to impeach a witness with the written statement of another.  In particular, the defense must be precluded from introducing the contents of the MOIs to impeach witnesses on the basis of inconsistent statements because the MOIs are not the statements of the witnesses themselves.[2]  Moreover, they must be precluded from publishing the contents of the MOIs to the jury, or otherwise suggesting to the jury that the 301 is a statement of the witness.  To allow otherwise would subvert the meaning of the Jencks Act and the Supreme Court's decision in *Palermo v. United States*, 360 U.S. 343 (1959), holding that it would "be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations."  360 U.S. at 350.

The defense is, of course, free to ask a witness whether he or she made a statement that is reflected in an MOI.[3]  However, if the defense is not satisfied with the witness's answer, the defense may not publish or introduce the contents of the MOI as a prior inconsistent statement. *See United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005) (holding that "such documents [FBI 302s] have been deemed inadmissible for impeaching witnesses on cross-examination.").  Moreover, the defense may not use the MOI in a way that suggests to the jury that the MOI is a

---

[2] Except, of course, if the witness is the Special Agent who prepared the MOI and the MOI concerns the subject matter of his testimony.

[3] Likewise, in the appropriate circumstances and with the proper foundation, the defense may attempt to refresh the witness's recollection by showing the witness the MOI, but only if the defense does so in a manner that does not imply that the 302 is the witness's own statement.

statement of the witness. *See United States v. Marks*, 816 F.2d 1207, 1210-11 (7th Cir. 1987) (holding that where defense counsel read from a MOI during cross-examination in a way that would "seem authoritative" and potentially confuse the jury, the judge was entitled to require the witness be shown the MOI and given the opportunity to adopt or reject it as a statement).

## IV. MISCELLANEOUS ISSUES

### A. EXPECTED LENGTH OF TRIAL/NUMBER OF WITNESSES

The government expects to call twenty-four witnesses to testify during its case-in-chief, subject to the Court's orders and circumstances at trial. Due to the number of Defendants and subject to the length of cross-examination, the government expects the trial to last two weeks.

### B. DEFENSE DIRECT EXAMINATION OF GOVERNMENT WITNESSES

The government is aware that some Defendants have issued subpoenas to government witnesses. In order to facilitate an efficient trial, and to avoid recalling the same witnesses, the government does not object should a Defendant wish to proceed with its own direct examination of a government witness once tendered the witness. However, the Court should require defense counsel to make it clear that they wish to conduct a direct examination and require that the rules of direct examination apply to that portion of the questioning. The government requests this relief to ensure there is a clear delineation between the direct examination of a witness by defense counsel and any cross examination.

### C. DISCOVERY STATUS

The government has fully complied with its discovery obligations and has consistently supplemented discovery in an ongoing process. The government has formally requested reciprocal discovery from defendants and filed a motion to compel discovery, which this Court has denied based upon all defendants' representations that they do not have any discovery to provide to the government. As of this filing, the government has discovery from only Defendant

Latham, and accordingly will move to preclude any materials not timely disclosed pursuant to the defendants' Rule 16(b) obligations.

    D.    <u>HYBRID/OPINION WITNESSES</u>

The government has provided notice concerning numerous individuals who may be called upon to provide opinions in this matter.  These individuals include John Klein, Small Business Administration (SBA); Benjamin Ward, Department of Veterans' Affairs; Daniel P. Mills, Computer Forensic Scientist, NASA.  The government has requested but not received reciprocal notice of defense experts and will move to exclude testimony from any undisclosed expert or opinion witnesses.

Of these individuals, Mr. Mills is expected to testify as a fact and opinion witness concerning his extraction of certain information and data in its original format from computers and phones belonging to the defendants.  A witness may testify as a dual role witness. *United States v. Seely*, 308 Fed. Appx. 870 (6th Cir. 2009).  To the extent the government seeks to elicit expert opinion from a witness, the attorney for the government will ask the witness upon what his or her opinion is based.

> Telling the jury that a witness is both a lay witness and an expert witness and will be alternating between the two roles is potentially confusing—and unnecessary. The lawyer examining the witness need only ask him the basis for his answer to a question, and the witness will then explain whether it was his investigation of the defendants' conspiracy or his general experience in decoding drug code. That tells the jury what it needs to know in order to determine how much weight to give the testimony and tells opposing counsel what he needs to know in order to be able to cross-examine the witness effectively. Using terms like "lay witness" and "expert witness" and trying to explain to the jury the difference between the two types of witness is inessential and, it seems to us, ill advised.

*United States v. Moreland*, 703 F.3d 976, 983-84 (7th Cir. 2012). *See also United States v. Rios/Casillas*, 2016 WL 3923881 (6th Cir. July 21, 2016) (harmless error).

E.     TRIAL DOCUMENTS

Due to their length, the Government's proposed jury instructions and voir dire have been filed under separate cover.  The Government will provide the Court and make available to the Defendants, a copy of the exhibits on October 24, 2019—the date of this filing.  Additionally, the Government will file its witness list on October 24, 2019.

F.     PRESENCE OF GOVERNMENT AGENTS AT TRIAL

The Government anticipates the Court ordering a separation of witnesses pursuant to Federal Rule of Evidence 615.  Federal Rule of Evidence 615(b) specifically excludes from the sequestration order "an officer or employee of a party which is not a natural person designated as its representative by its attorney."  The Government anticipates designating NASA-OIG Special Agent Ryan Sims, NASA-OIG Investigative Auditor Elaine Mylod, and SBA-OIG Special Agent Tamara Morgan, the case agents and investigators, as the Government's representatives present at counsel table.

Federal Rule of Evidence 615(c) provides an additional exception to the court's sequestration order for witnesses "whose presence is shown by a party to be essential to the presentation of the party's cause." *See United States v. Mohney*, 949 F.2d 1397, 1404-05 (6th Cir. 1991). The rule, therefore, allows the Government to designate representatives in addition to the case agent for certain prosecutions that are sufficiently complex so that "the aid of more than one law enforcement officer is needed to sort through extensive, technical evidence, and to help 'map out strategy.'"  *United States v. Phibbs*, 999 F.2d 1053, 1072 (6th Cir. 1993). "The 'essential' witness exception set out in Rule 615(3) 'contemplates such persons as an agent who handled the transaction being litigated or an expert needed to advise counsel in the management of the litigation.'"  *Id.* at 1073 (quoting Advisory Committee Notes to Fed.R.Evid. 615).  Here, the government is presenting a case spanning eight years, covering at least four government

contracts in three states and affecting separate programs administered by the Small Business

Administration and the VA.  The government anticipates presenting hundreds of trial exhibits

through its 24 witnesses. Accordingly, given the complexity of this matter and need to present

the case efficiently to the jury, the government requests that more than one government

representative be permitted to sit at counsel's table.

<div style="margin-left: 40%">

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By:   /s/ Om Kakani
       Om Kakani (NY: 4337705)
       Assistant United States Attorney
       United States Court House
       801 West Superior Avenue, Suite 400
       Cleveland, OH 44113
       (216) 622-3756
       (216) 685-2378 (facsimile)
       Om.Kakani@usdoj.gov

</div>

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of October 2019 a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

/s/ Om Kakani
Om Kakani
Assistant U.S. Attorney